**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

SADIE J. PERCHES,

Plaintiff,

vs. No. CIV 02-1495 RHS

JO ANNE B. BARNHART, Commissioner of Social Security Administration,

Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed July 7, 2003. [Doc. No.14]. The Commissioner denied Plaintiff's request for Supplemental Security Disability Income ("SSDI") benefits.

Plaintiff, age 49, alleges a disability which commenced on July 1, 1990 due to back problems, asthma, right knee pain, residual problems from a gunshot wound, heart problems and depression. The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") also denied the application, concluding that Ms. Perches had the residual functional capacity for a full range of light work and was therefore not disabled. The Appeals Council denied review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

At the time of the Commissioner's final decision, claimant was 48 years old, with a tenth grade education. Her past relevant work was as a custodial worker. Tr. at 93, 119.

The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

Ms. Perches contends that the ALJ erred in finding that Plaintiff's mental impairment was non-severe. She also argues that the ALJ erred in evaluating her residual functional capacity.

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted). At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At step five, the burden shifts to the Commissioner to show that the claimant has a Residual Functional Capacity ("RFC") to do work in the national economy other than past relevant work. Thompson at 1487 (citations omitted). The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. The grids reflect the existence of jobs in the national economy at various Residual Functional Capacity ("RFC") levels

by incorporating administrative notice of occupational publications and studies.  20 C.F.R. §§404.1566(d); 416.966(d).  This aids the Commissioner in determining what specific job types in the national economy the claimant can perform.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

The ALJ found that Ms. Perches had a severe impairment of her musculoskeletal system and non-severe impairments of her digestive, respiratory, cardiovascular and mental body systems. Tr. at 38.   He denied Plaintiff's case at step five of the sequential evaluation process. The ALJ determined that the Plaintiff's reduced ability to lift and carry rendered her unable to return to her past work, but that she remained capable of performing a full range of light work  and  that she was therefore not disabled based on application of the Medical-Vocational Guidelines.  Tr. at 15.

**First Alleged Error**

Plaintiff alleges that the ALJ erred in finding her mental impairment was non-severe.   A severe mental impairment is a nonexertional limitation that must be considered by the Commissioner if there is evidence to support the existence of the impairment.  Cruse v. U.S. Dep't of Health &Hum. Serv., 49 F.3d 614, 619 (10th Cir.1995); Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991); Williams v. Bowen, 844 F.2d 748, 752 (10th Cir. 1988).  A claimant's mental impairment must also be evaluated in combination with the effects of other impairments. Hargis v. Sullivan, 945  F.2d 1482, 1491 (10th Cir. 1991).

Ms. Perches' records reflect pharmacological treatment for depression  and insomnia beginning in 1998. Tr. at 140, 142. Her neurologist and primary care physicians prescribed several antidepressant and hypnotic medications from 1998 through 2001, but there is no evidence of

therapy or other treatment by mental health professionals during that time. Consulting psychologist, J. Leroy Gabaldon, Ph.D., completed a Psychiatric Review Technique Form (SSA-2506-BK) in September 2001. Dr. Gabaldon opined that Ms. Perches did not have any medically determinable mental impairment. Tr. at 154-166.

Plaintiff was seen twice in January of 2002 at the UNM Mental Health Center and was rated as 46 and 35 on the Global Assessment of Functioning (GAF) [1] by the nurses who did her psychiatric triage and assessment on those dates. Tr. at 171, 172. Medication for insomnia and depression was prescribed and Plaintiff was urged to decrease her oxycodone use. Tr. at 170-173.

A evidentiary hearing was held on March 5, 2002, at which Plaintiff testified that she often anxious and depressed. Tr. at 258-262. She stated that she had difficulty sleeping in the past but that at the time of the hearing her prescribed medication was enabling her to get a full night's sleep. Tr.at 262-263.

On March 7, 2002, Plaintiff's treating physician referred her to Robert J. Thoma, Ph.D., for a neuropsychological examination. The testing performed by Dr. Thoma reflected a full scale IQ of 76 and a verbal IQ of 74. He found her intellectual ability to be in the borderline range. Tr. at 184-188.

On May 21, 2002, the Commissioner referred Ms. Perches to Carl B. Adams, Ph.D., for a consultative psychological examination. Dr. Adams opined that Plaintiff was experiencing

[1]The GAF is used to report "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 30 (4th Ed. 1994). The GAF scale defined the range from 41-50 as "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." A GAF of 35 represents more extreme impairment. Id. at 34.

situational depression and his formal diagnosis was factitious disorder[2]. Tr 190-191. He stated that Ms. Perches had no mental impairment of her ability to do work related activities. Tr. at 192-193.

Ms. Perches argues that her low intellectual functioning is a significant nonexertional impairment at step two or may equal a listing at step three. Under the impairment listed at 20 C.F.R. Pt 404, Subpt. P, App. 1 12.05(C), a claimant is considered disabled if she has a full scale IQ of between 60 and 70 and, in addition, has another physical or mental impairment imposing additional and significant work related limitation of function. "Slightly higher IQ's (e.g.70-75) in the presence of other physical or mental disorders that impose additional and significant work related limitation of function may support an equivalence determination." The Social Security Programs Operations Manual § DI24515.056D1C. Plaintiff's full scale IQ score was 76. It was not error for the ALJ to find that Ms Perches did not have an impairment that met the listed requirements at step two or that her impairment did not equal the listing at step three.

Plaintiff also contends that the ALJ ignored her GAF scores from the UNM Mental Health Center. She argues that these scores indicate that she is unable to keep a job. The ALJ observed that her medication was adjusted on each of these occasions and relied upon the opinion of Dr. Adams that the anxiety that she had at that time was "transient and situational and not a chronic condition." Tr. p 39. It was not error for the ALJ to weigh the later assessment of the consulting psychologist more heavily than the previous assessments by the nurses at the Mental Health Center.

Finally, Plaintiff argues that the ALJ should not have relied upon the report of Dr. Adams. Although the report appears to be detailed and comprehensive, two months after the decision was

---

[2] A factitious disorder is a term for intentionally feigned symptoms. DSM-IV , p. 471.

filed in this case and five months after her examination by Dr. Adams, Plaintiff filed an affidavit stating that her examination had been less than fifteen minutes long.  The affidavit is listed on the Appeals Council's exhibit list, Tr. at 4,7, but the length of Plaintiff's psychological examination was not specifically addressed when Plaintiff's request for review was denied. Tr. at 5-6.

The report of Dr. Adams contains a social and medical history and thorough discussion of Plaintiff's orientation, recall, perception, appearance and mood during her examination.  The Court has reviewed the document and finds it is longer and more complete than would be expected to result from an inadequate examination.  The ALJ was entitled to rely on the report and it was not error for the Appeals Council to deny Plaintiff's request for review on the basis that the examination was inadequate.

**Second Alleged Error**

Plaintiff also contends that the ALJ erred in his RFC finding that she was capable of light work.  Ms. Perches argues that the ALJ improperly failed to make a function-by-function finding of her limitations.  She also contends that he erred by mixing his credibility finding with his RFC finding.

A function-by-function assessment of a claimant's RFC is required before a finding that the claimant can perform her past relevant work at step four.  SSR 96-8p.  In this case, the ALJ determined that Ms. Perches could not perform her past relevant work and decided the case at step five.  He appropriately classified her RFC by exertional level at step five and no error was committed.

Plaintiff also argues that the ALJ improperly used his finding that her complaints were not credible to support his RFC finding.  The ALJ stated that his decision was based on a "careful consideration of the entire record."  Tr. at 38.  The x-rays and other objective medical data in this

case support the RFC finding. Plaintiff contends that her use of prescription pain medication is evidence that she has a severe impairment, however, there are repeated indications that her health care providers believe that Plaintiff is dependant on narcotic medications and that her use of those medications should be reduced. Tr. at 30, 32, 142, 170-172,227,228 Taking pain medication is not unequivocal evidence of severe pain.

Dr. Toner, a examining consultative physician, completed a functional assessment that found Plaintiff had no limitations in standing, walking, lifting, carrying or sitting. Tr. at 150-151. He stated that Plaintiff's small size would probably limit her to lifting no more than thirty pounds. Tr. at 145. He concluded that "this claimant's complaints are in excess of objective findings" and that he was "not convinced that [her pain] medication is necessary to control the pathology that is apparent on this exam." Id.

The ALJ noted Dr. Toner's opinion, but determined that Plaintiff was capable of more limited exertional work than the consultant found she would be able to perform. Although Dr. Toner's report would support a finding of a medium RFC, the ALJ considered the entire record including Plaintiff's testimony to arrive at his decision that "at least a light RFC is indicated." Tr. at 41. He observed that Plaintiff's blood chemistry studies did not indicate an inflammatory arthritic process, her x-rays and imaging studies were essentially normal and that there were no structural abnormalities found on examination. Id.

Ms. Perches does not argue that any objective findings support her claim of an exertional disability except her use of prescription pain medication. An ALJ may discount significance of pain or non-exertional symptoms when there is a lack of objective corroborative evidence. Diaz v. Sec'y of HHS, 898 F.2d 774, 777 (10th Cir. 1990). "Credibility determinations are peculiarly the province of the finder of fact and [the Court] will not upset such determinations when supported

by substantial evidence." Diaz v. Sec. of Health & Hum. Serv., 898 F.2d 774, 777 (10th Cir. 1990); cited in Winfrey v. Chater, 92 F.3d 1017, 1020 (10th Cir. 1996).The ALJ's conclusion that Plaintiff's "assertions that she does not retain the residual functional capacity necessary to perform light work [are] not credible," Tr.at 40, is justified by the record.

**Conclusion**

The ALJ's findings that Ms Perches did not have a severe mental impairment and that she had a residual functional capacity for light work are supported by substantial evidence. The ALJ used correct legal standards in evaluating the evidence.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand [Doc. No.14] is **DENIED** and this cause of action is dismissed with prejudice.

Robert Hayes Scott
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE